ORLANDO MORALES, Plaintiff-Appellant, v. FAIL SAFE, INC., Defendant-Appellee.

First District (6th Division) No. 1—98—1948

Opinion filed December 30, 1999.

---

Richard S. Zachary, of Glenview, for appellant.

Heineke, Burke, Healy & Bodach, of Chicago (Jean M. Varak, of counsel), for appellee.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

On April 23, 1998, the trial court entered an order dismissing count II of Orlando Morales's third amended complaint. The com-

plaint sought to set forth a cause of action under the Illinois Liquor Control Act of 1934 (235 ILCS 5/6—21 (West 1996)) (popularly known as the Dramshop Act) for injuries he sustained in a tavern operated by Fail Safe, Inc. The court based its order on two determinations. First, the court found that count II of the third amended complaint could not relate back to plaintiff's first amended complaint under section 2—616 of the Code of Civil Procedure (735 ILCS 5/2—616 (West 1996)) because the dramshop action against Fail Safe was not filed within one year of March 26, 1995, the date of the alleged occurrence. Second, the court determined that plaintiff's first amended complaint did not contain sufficient information to put Fail Safe on notice of a dramshop claim sufficient to allow relation back under section 2—616. We have jurisdiction pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a).[1]

On October 6, 1995, within one year of his injury, plaintiff filed a complaint against Big Time Productions, Inc. In the complaint he asserted that Big Time Productions owned and operated the Ka-Boom tavern at 770 North Halsted and that Big Time Productions was negligent on March 26, 1995, in failing to provide sufficient security to protect its patrons from "certain gang members" who had been "drinking excessively." Plaintiff alleged that he was attacked that day by a tavern patron who proceeded to "grind a beer bottle into his face." Plaintiff suffered serious injuries.

On October 18, 1995, plaintiff served Big Time Productions, Inc., with the complaint at the address where the tavern was located. The complaint was forwarded to an insurance adjuster representing the tavern, Maxon Young Associates, Inc.

On November 2, 1995, a letter was sent by James K. Joyce at Maxon Young Associates to "Fail Safe, Inc. d/b/a KA-BOOM, c/o Big Time Productions, Inc." The letter stated that the "liquor liability

---

[1]In its brief, plaintiff asserts that we have jurisdiction over this appeal pursuant to Supreme Court Rule 301. See 134 Ill. 2d R. 301. However, jurisdiction under Rule 301 is limited to the review of judgments that are "final," meaning that the judgment disposes of the entire controversy between the parties. See *Mostardi-Platt Associates, Inc. v. American Toxic Disposal, Inc.*, 182 Ill. App. 3d 17, 19, 537 N.E.2d 922 (1989). In that the trial court denied defendant Fail Safe's motion for summary judgment as to count I of plaintiff's third amended complaint on March 17, 1998, the record indicates that final judgment has yet to be entered. Nonetheless, in entering its order dismissing count II, the trial court specifically found the order to be "appealable." Accordingly, we have jurisdiction under Supreme Court Rule 304(a). See *In re Application of the Du Page County Collector*, 152 Ill. 2d 545, 605 N.E.2d 567 (1992).

policy" in effect covering the premises would not cover the allegations of plaintiff's complaint because the complaint alleged acts of negligence and was not grounded in the Dramshop Act. Joyce concluded the letter by asking that he be "notified immediately if at any future date the allegations [of the complaint are] changed to include" dramshop liability.

On January 19, 1996, a letter was sent by an attorney/insurance broker named Gary Weiner to Ms. Meryl Lachman at Associated Underwriters on behalf of Ka-Boom tavern. The letter complained about Joyce's determination regarding coverage under Ka-Boom's liquor liability policy:

"First, it is clear that [Joyce] has taken a very limited examination of the complaint in that it clearly states in paragraph 7 of the complaint that the defendants were 'drinking excessively.' I do not see how this could possibly be missed and it certainly is a direct allegation in the Complaint."

Weiner stated that he was "shocked" that Joyce "might even suggest this position [*i.e.*, that there was no coverage under the policy]." Weiner sent a courtesy copy of the letter to Kenneth Barilich and Cal Fortis.

On February 27, 1996, no answer or appearance being filed, plaintiff obtained a default judgment against Big Time Productions, Inc. On March 6, 1996, the defendant moved to vacate the default.

On March 8, 1996, plaintiff moved to file an amended complaint and add Fail Safe, Inc., as a party defendant. The court allowed the motion and plaintiff filed the first amended complaint on March 18, 1996, still within one year of the date of the occurrence, with summons on Fail Safe to issue.

On April 18, 1996, Joyce responded to Weiner's earlier letter to Associated Underwriters and asserted that "the mere allegation of 'drinking excessively' is insufficient to give rise under the Dramshop Act." Joyce stated that the insurer would provide a defense "if a claim under the Dramshop Act was alleged" and that, should plaintiff's complaint be amended to allege a dramshop action, the insurer would "proceed accordingly." A courtesy copy of the letter was sent to "Fail Safe, Inc. dba Ka-Boom."

On May 15, 1996, Big Time Productions filed an answer to count I of the first amended complaint, denying its allegations, including the allegation that it owned and operated Ka-Boom tavern. Fail Safe also filed its appearance and thereafter filed its answer to the first amended complaint. In its answer, Fail Safe admitted that it owned and operated the Ka-Boom tavern, but denied the remaining allegations.

In January of 1997, defendants filed their answers to interrogato-

ries. Big Time Productions, Inc.'s answers were signed by its president, Kenneth Barilich, who was also the secretary for Fail Safe. Cal Fortis was identified as a person having authority to speak for Fail Safe.

On January 16, 1997, plaintiff was granted leave to file a second amended complaint in three counts. Counts I and II were identical to the first amended complaint. In count III, the same allegations, in the alternative, were directed at two individuals, one of whom was Fortis.

On January 24, 1997, Big Time Productions moved for summary judgment. It argued that it was in the "business of advertising and promotions" and did not own or operate Ka-Boom. The court granted partial summary judgment on this basis in favor of Big Time Productions on May 6, 1997.

On October 7, 1997, Fail Safe filed a motion for summary judgment. Fail Safe argued that it had no duty to protect plaintiff from the attack of gang members and that it lacked notice of any prior incident involving plaintiff's assailant.

On October 16, 1997, while Fail Safe's motion remained pending, plaintiff was granted leave to file a third amended complaint. Pled in two counts, this complaint was directed solely at Fail Safe. Count I was identical to count II of the second amended complaint and alleged negligence. In count II, plaintiff asserted a cause of action under the Dramshop Act. Count II alleged that on March 25, 1995, Fail Safe was the owner and operator of the tavern; that Fail Safe served intoxicating beverages at the tavern to members of the public; that its agents and employees knew that alcoholic liquors were being sold on the premises; that the liquor so served caused the intoxication of certain gang members who were Fail Safe's customers; and that these gang members were so affected by the liquor that they assaulted and battered plaintiff, causing serious injury.

On November 18, 1997, Fail Safe filed a motion to dismiss count II of the third amended complaint. Fail Safe argued that the Dramshop Act provided for a one-year time limit for the filing of a cause of action and that filing a dramshop action within one year was a "condition precedent" to plaintiff's cause of action. Fail Safe sought dismissal noting that plaintiff had failed to sue Fail Safe on a dramshop theory of liability within the one-year period. The circuit court agreed, dismissing count II with prejudice and finding that the order was final and appealable.

■ We begin our analysis by reviewing the Dramshop Act, which states that "[e]ach action hereunder shall be barred unless commenced within one year next after the cause of action accrued." 235 ILCS 5/6—21 (West 1996). Illinois courts have routinely held that the dram-

shop cause of action is *sui generis* and purely a creature of statute. The one-year proviso of the Dramshop Act is not a statute of limitations; it is a condition precedent to the right of recovery that must be observed by all plaintiffs in order to bring themselves within the coverage of the Act. *Demchuk v. Duplancich*, 92 Ill. 2d 1, 6-7, 440 N.E.2d 112 (1982).

The liability imposed and the nature of the damages recoverable under the Dramshop Act are of statutory origin and are expressly and exclusively defined within the Act. *Thompson v. Capasso*, 21 Ill. App. 2d 1, 4, 157 N.E.2d 75 (1959). It follows that the dramshop cause of action cannot be made analogous to other actions and that when the legislature created dramshop rights under the Act, it imposed specific conditions and restrictions upon them. *Thompson*, 21 Ill. App. 2d at 4.

The history of the Act is important to understanding the one-year condition precedent created by section 6—21. "The Illinois Dram Shop Act presents one of the curious and perhaps unique anomalies in the law." R. Ogilvie, *History and Appraisal of the Illinois Dram Shop Act,* 1958 U. Ill. L.F. 175 (hereinafter, Ogilvie). The Act was created purely by statute and has no counterpart in common law. At common law it was not a tort to sell or give alcoholic liquor to an able-bodied person. Thus, the Act creates an entirely new cause of action, which was not recognized at common law. Ogilvie, 1958 U. Ill. L.F. 175.

The Act is also unique in that, unlike general tort liability, fault or wrongdoing on the part of the defendant is not essential to his liability, and the Act imposes liability upon persons other than the one directly causing the injury. Ogilvie, 1958 U. Ill. L.F., at 180. The Act holds both the operator of the tavern liable as well as the property owner so long as the owner knew that liquor was being served on the premises. 235 ILCS 5/6—21 (West 1996). "There are few instances in the law where the scales of justice are tipped so heavily against the owner of property and in favor of injured parties." Ogilvie, 1958 U. Ill. L.F., at 186.

As explained in *Cook v. Logan's Inferno, Inc.*, 90 Ill. App. 2d 83, 232 N.E.2d 117 (1967), the Act originally did not contain a commencement requirement. Therefore, the two-year general statute of limitations applied for an injury to the person. However, in 1949, the General Assembly amended the Dramshop Act, adding a clause proving that "every action thereunder shall be commenced within 2 years next after the cause of action accrued." *Cook*, 90 Ill. App. 2d at 86. At the time that the clause was added, personal injury actions were already governed by a two-year statute of limitations. Therefore, the amendment was interpreted as a condition precedent and not a statute of limitations. *Cook*, 90 Ill. App. 2d at 86-87.

In *Thompson*, this court determined that the 1949 amendment to

the Dramshop Act made the timely filing of an action under the Act a necessary element of the dramshop cause of action. *Thompson*, 21 Ill. App. 2d at 5. "The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability." *Thompson*, 21 Ill. App. 2d at 5.

On July 1, 1956, the two-year period was shortened by the General Assembly to one year. *Huckaba v. Cox*, 14 Ill. 2d 126, 128, 150 N.E.2d 832 (1958). Thus, the right to bring a cause of action under the Dramshop Act only arises if the action is brought within one year of the date the cause of action accrued. Here, because plaintiff failed to bring his claim within one year of the date the alleged occurrence, his right to pursue a dramshop claim was extinguished.

Plaintiff urges that we rely upon the fact that he brought two complaints within a year of the March 26, 1995, occurrence. The original complaint was filed on October 6, 1995, and the first amended complaint was filed on March 18, 1996. Although neither of these complaints invoked the Dramshop Act, plaintiff argues that both these pleadings conveyed information to Fail Safe, and/or its agents and officers, essential to preparing a dramshop defense. Plaintiff asserts that both these pleadings contained a "core" of material facts "substantially identical" to the ultimate dramshop claim on which he now relies. This is sufficient, plaintiff claims, for him to assert that his third amended complaint, which was filed October 16, 1997, related back to the timely filed versions of his complaint under the terms of section 2—616 of the Code of Civil Procedure. 735 ILCS 5/2—616 (West 1994).

Section 2—616 of the Code reads in relevant part as follows:
"§ 2—616. Amendments. ***

* * *

(d) A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) failure to join the person as a defendant was inadvertent; (3) service of summons was in fact had upon the person, his or her agent or partner, as the nature of the defendant made appropriate, even though he or she was served in the wrong capacity or as agent of another, or upon a trustee who has title to but no power of management or control over real prop-

erty constituting a trust of which the person is a beneficiary; (4) the person, within the time that the action might have been brought or the right asserted against him or her, knew that the original action was pending or concerning him or her; and (5) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended." 735 ILCS 5/2—616(d) (West 1996).

■ We agree that plaintiff has met the first four enumerated conditions of section 2—616(d). Both plaintiff's October 6, 1995, and March 8, 1996, complaints were filed within one year of his injury. Although his first complaint named Big Time Productions and not Fail Safe as a party defendant, it is clear that plaintiff was attempting to name the owner of the tavern. In any event, plaintiff named Fail Safe within one year of the alleged occurrence. Also, as plaintiff notes, the first complaint was served on Kenneth Barilich as president of Big Time Productions. Barilich was also the corporate secretary of Fail Safe, indicating that Fail Safe had actual notice of plaintiff's suit within one year of plaintiff's injury. The correspondence between Fail Safe and its insurance carriers regarding potential dramshop liability establishes conclusively that Fail Safe had knowledge that it was facing a potential dramshop action within one year of plaintiff's occurrence.

Plaintiff, however, has failed to meet the fifth condition of section 2—616(d) because the actual commencing a dramshop claim within one year is a condition precedent to dramshop liability. Although the language of section 2—616(d) states that the plaintiff need not allege that he has met all the conditions precedent in the original complaint, the relation-back statute requires that *"the condition precedent"* (in this case the filing of a dramshop action) have *"in fact been performed."* (Emphasis added.) 735 ILCS 5/2—616(d) (West 1996). Here, because plaintiff did not commence his cause of action within one year, and because this is a condition precedent to liability under the Dramshop Act, plaintiff's third amended complaint was properly dismissed.

Plaintiff cites two cases for the proposition that section 2—616(d) can be applied to Dramshop Act liability. Each of these cases, however, is distinguishable.

In *Simmons v. Hendricks*, 32 Ill. 2d 489, 207 N.E.2d 440 (1965), a dramshop complaint was filed within one year of the date of the incident by children suing by their mother as next friend for loss of support by their father, who was the alleged intoxicated person. *Simmons*, 32 Ill. 2d at 490-91. The original complaint stated that as a result of the incident the plaintiffs were deprived of their means of support. A second amended complaint was filed over two years after the incident naming the father a plaintiff suing for the use and benefit of his wife and minor children. *Simmons*, 32 Ill. 2d at 491. The trial court granted defendant's motion to dismiss because the father was added as a plaintiff for the first time more than two years after the date of the occurrence. The appellate court reversed the trial court's holding and our supreme court affirmed the appellate court's ruling.

Although the supreme court stated that the amended complaint could relate back to the original complaint, the court noted that the father was the alleged intoxicated person, meaning that, under the Dramshop Act, he could not share any recovery. *Simmons*, 32 Ill. 2d at 490, 492. Because the recovery would go exclusively to the wife and children, the court found the amended complaint adding the father was a nominal amendment only which had no effect on the substance of the pleadings. *Simmons*, 32 Ill. 2d at 492.

Likewise, in *Lopez v. Oyarzabal*, 180 Ill. App. 3d 132, 535 N.E.2d 8 (1989), a dramshop cause of action was filed within one year of the date of the incident by a father whose son had died in a motorcycle accident. *Lopez*, 180 Ill. App. 3d at 133. The complaint alleged that the father had been appointed administrator of his son's estate, which was incorrect. After more than one year had elapsed from the date of the incident, defendants moved to dismiss plaintiff's second amended complaint arguing that the plaintiff had never been properly appointed administrator of the estate of his son by the probate court and that plaintiff's action was barred since more than one year had elapsed since the date of the occurrence. *Lopez*, 180 Ill. App. 3d at 134. The trial court granted the defendant's motion to dismiss, which was reversed by this court. In *Lopez*, the correct plaintiff brought a dramshop suit against the correct defendant within one year of the date of the cause of action. *Lopez*, 180 Ill. App. 3d at 137. There was only a technical problem with the pleading in that the plaintiff had not been properly appointed administrator. The court allowed the amendments to the dramshop pleadings because a dramshop cause of action had already been filed within one year of the date of the occurrence.

In the present case, neither of the complaints filed within a year of the occurrence alleged dramshop liability. Accordingly, plaintiff's complaint was properly dismissed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur.